UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANASTACIO REYNA,

        Plaintiff,                                  Hon. Wendell A. Miles

v.                                                       Case No. 5:04-CV-114

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

        The Commissioner determined that Plaintiff is not disabled as defined by the Act.  Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, I recommend that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 42 years of age at the time of the ALJ's decision.  (Tr. 13).  He successfully completed high school and worked previously as a dishwasher, cook, gas station attendant, and general laborer.  (Tr. 13, 76-81).

Plaintiff applied for benefits on April 30, 2002, alleging that he had been disabled since April 11, 2002, due to pain in his left leg.  (Tr. 43-45, 62).  Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 26-42). On June 30, 2003, Plaintiff appeared before ALJ Thomas Walters, with testimony being offered by Plaintiff and vocational expert, Michelle Ross.  (Tr. 219-45).  In a written decision dated February 12, 2004, the ALJ determined Plaintiff was not disabled.  (Tr. 12-20).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (Tr. 5-7).  Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## MEDICAL HISTORY

On March 6, 1994, Plaintiff was struck by a vehicle suffering fractures to his right and left tibia.[1]  (Tr. 116-17, 143).

On April 11, 1994, Plaintiff was examined by Dr. Daniel Garcia.  (Tr. 143-44).  X-rays of Plaintiff's lower extremities revealed "early healing changes."  (Tr. 143).  Plaintiff reported no difficulties with his right lower extremity, on which he was able to perform 100 percent weight bearing.  An examination of Plaintiff's left lower extremity revealed "a pain response on any mobilization at the left ankle," but the doctor further reported that Plaintiff's "knee and ankle motion otherwise is quite well maintained."  *Id.*

Plaintiff returned to Dr. Garcia on April 26, 1994.  (Tr. 142).  Plaintiff reported that he was "doing well" with "no particular pain nor complaint."  Plaintiff was utilizing a walker, but was "fully weight bearing."  Dr. Garcia noted, however, that he was concerned that Plaintiff may have suffered an intra-articular fracture of his left ankle.  *Id.*

X-rays of Plaintiff's right knee, taken on October 9, 2001, were unremarkable with no evidence of fracture or dislocation.  (Tr. 135).

On March 21, 2002, Plaintiff reported to the emergency room complaining of pain in his lower back and left lower extremity.  (Tr. 124).  X-rays of Plaintiff's lumbar spine revealed no evidence of fracture, significant disc space narrowing, or significant arthritic changes.  (Tr. 123-24).  An examination of Plaintiff's lumbar spine revealed tenderness and straight leg raising was

---

[1] The tibia is the larger and stouter of the two bones of the lower leg.  J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* T-130 (Matthew Bender) (1996).

4

positive. (Tr. 124). An examination of Plaintiff's lower extremities was unremarkable. *Id.* Plaintiff was diagnosed with back pain and discharged home. (Tr. 125).

On June 13, 2002, Plaintiff completed a questionnaire regarding his activities. (Tr. 92-95). Plaintiff reported that he prepares his own meals, washes dishes, washes laundry, shops for groceries, reads, watches television, visits with friends, and goes fishing. (Tr. 92-95). Plaintiff reported that he experiences "lots of pain" in his legs and lower back. (Tr. 95).

On June 13, 2002, one of Plaintiff's friends, Cynthia Lawe, completed a similar questionnaire describing Plaintiff's activities. (Tr. 83-88). According to Lawe, Plaintiff enjoys cooking, watching television and "loves to work in his garden." (Tr. 83). She reported that Plaintiff drives, cooks, and reads daily. (Tr. 85). She further reported that Plaintiff cleans his house, shops, plays cards, and visits with his neighbors on a regular basis. (Tr. 85-86).

On July 24, 2002, Plaintiff participated in a consultive examination performed by Dr. Bharti Sachdev. (Tr. 145). Plaintiff reported experiencing pain in his lower extremities. (Tr. 145). He was able to flex his left knee to 65 degrees and was also unable to fully straighten his left knee. (Tr. 146). Plaintiff was able to flex his right knee to 120 degrees. Plaintiff walked with a limp and was unable to raise up onto his heels or toes. An examination of Plaintiff's left lower extremity revealed "a deformity and bony prominence over the left lower extremity over the tibia and fibula just above the ankle." *Id.*

X-rays of Plaintiff's right lower extremity revealed:

Healed fracture deformity of middle third of tibia is seen. The remainder of the bones appear normal. Early degenerative changes are seen at the ankle and knee joints.

(Tr. 150).

>X-rays of Plaintiff's left lower extremity, taken the same day, revealed:
>
>Intramedullary rod in tibia with healed fracture deformities of distal tibia and fibula are seen. Moderate degenerative changes are seen at the knee joint and minimally at the ankle joint.

*Id.*

Dr. Sachdev concluded that Plaintiff was experiencing "significant pain in the left lower leg preventing him from walking." *Id.*

On August 12, 2002, Plaintiff reported that while he "can't kneel at all," he was able to walk "a few blocks and back," stand for a "few hours" before "needing to sit," and sit so long as he could "move around about every 3 hours or so." (Tr. 96).

On August 14, 2002, Plaintiff participated in a consultive examination performed by Lee Koski, LLP, and Hugh Bray, Ph.D. (Tr. 160-64). Plaintiff reported that he used to receive disability benefits for drug and alcohol abuse and "would like to get back on his benefits now." (Tr. 160). Plaintiff reported experiencing pain in his lower extremities. *Id.* He reported that his pain rated as high as 7-8 (on a scale of 1-10), but was reduced to 4-5 with medication. (Tr. 161). Plaintiff reported that "one of the things that have aggravated his condition is that he has gained 85 pounds in the last eighteen months because of lack of activity."

Plaintiff reported that he can walk "about a block," sit for "about an hour," and stand "for about an hour." He reported that he can lift "about 30 pounds." *Id.* Plaintiff walked without an assistive device and sat throughout the examination without fidgeting or otherwise moving. (Tr. 160-61). Plaintiff exhibited "some discomfort in his change of position to a standing position." (Tr. 160). The results of a mental status examination were unremarkable. (Tr. 162-63). Plaintiff was diagnosed with cannabis abuse and his GAF score was rated as 60. (Tr. 163).

6

On May 5, 2003, Plaintiff participated in a neurosurgical consultation conducted by Dr. Orhan Ilercil. (Tr. 186-89). Plaintiff reported experiencing back pain which radiated into his left lower extremity. (Tr. 186). An examination of Plaintiff's lower extremities revealed weakness, but Plaintiff exhibited normal coordination and deep tendon reflexes. (Tr. 188). Babinski sign was negative and there was no evidence of clonus. The results of an MRI examination revealed left paracentral disc herniation at L4-5. Dr. Ilercil recommended that Plaintiff undergo a lumbar diskectomy procedure. *Id.*

On June 13, 2003, Plaintiff participated in an MRI examination of his lumbar spine, the results of which revealed a left paracentral herniated disc at L4-5 which "appears" to compromise the developing left L5 nerve root. (Tr. 184-85).

On June 19, 2003, Plaintiff participated in a functional capacity evaluation conducted by physical therapist Robert Essex. (Tr. 196-205). Plaintiff reported that he was experiencing pain, weakness, and limited range of motion. (Tr. 196). Prior to the evaluation, Plaintiff reported his pain as 8 on a scale of 1-10. (Tr. 203). At the conclusion of the examination, Plaintiff reported that his pain was 9.5 on a scale of 1-10. *Id.*

Essex reported that if placed in a "competitive work situation," Plaintiff can continuously sit for 30-60 minutes and continuously stand for 10-20 minutes. (Tr. 197). The therapist reported that during an 8-hour workday, however, Plaintiff can sit for only "about 2 hours" and can stand/walk for "less than 2 hours." *Id.* Essex also reported that Plaintiff required a sit-stand option. (Tr. 198). Essex reported that Plaintiff can occasionally lift 20 pounds and can frequently lift 10 pounds. (Tr. 199). The therapist concluded that Plaintiff is able to function at the sedentary/light physical demand level. (Tr. 201). Essex further noted that "it is improbable that

7

[Plaintiff] would be able to sustain gainful employment at this time. However, I do not see this disability as a permanent condition and would defer ultimate judgment in this regard once the outcome of the most recent MRI is made available." *Id.*

On June 30, 2003, Dr. Davis completed a report concerning Plaintiff's ability to "engage in work related activities." (Tr. 207-10). The doctor reported that Plaintiff's pain "constantly" interferes with his ability to concentrate and severely limits his ability to deal with work-related stress. (Tr. 208). Dr. Davis reported that if placed in a "competitive work situation," Plaintiff can continuously sit for 60 minutes and continuously stand for 30 minutes. The doctor reported that during an 8-hour workday, Plaintiff can sit and stand/walk for "less than 2 hours" each. *Id.* The doctor reported that Plaintiff can occasionally lift less than 10 pounds, but can never lift more than 10 pounds. (Tr. 209).

At the administrative hearing, Plaintiff testified that he was five feet ten inches tall and weighed 340 pounds. (Tr. 228). Plaintiff reported that he was unable to "bend or kneel down on [his] left knee." (Tr. 230). He also reported that his "left foot is like numb and [his] calf it tingles all the time." *Id.* Plaintiff reported that his left leg was "real, real weak." (Tr. 231). He also testified that he was experiencing a throbbing pain in his lower back which radiated into his left leg. *Id.* Plaintiff reported that he recently began walking with a cane. (Tr. 230). Plaintiff testified that he experiences pain "mostly all the time," but does not take any prescription medications for his pain. (Tr. 231-33). Plaintiff reported that "most" of the time he is forced to either sit or lay down because of his pain. (Tr. 234-35). He testified that he could only lift five pounds. (Tr. 236).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

The ALJ determined that Plaintiff suffers from obesity and disorders of the back (discogenic and degenerative), severe impairments which neither alone nor in combination satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 14). The ALJ further determined that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

perform despite his limitations. (Tr. 17-19). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ Failed to Properly Evaluate the Opinion of Plaintiff's Treating Physician

Dr. Horace Davis began treating Plaintiff in 1994 following the injuries he suffered to his lower extremities. (Tr. 143-44). Dr. Davis maintained a treating relationship with Plaintiff until after his alleged disability onset date. (Tr. 126-44). On June 30, 2003, Dr. Davis completed a report concerning Plaintiff's ability to "engage in work related activities." (Tr. 207-10). The doctor reported that Plaintiff's pain "constantly" interferes with his ability to concentrate and severely limits his ability to deal with work-related stress. (Tr. 208). Dr. Davis reported that if placed in a "competitive work situation," Plaintiff can continuously sit for 60 minutes and continuously stand for 30 minutes. The doctor reported that during an 8-hour workday, Plaintiff can sit and stand/walk for "less than 2 hours" each. *Id.* The doctor reported that Plaintiff can occasionally lift less than 10 pounds, but can never lift more than 10 pounds. (Tr. 209). The vocational expert testified that such limitations precluded the performance of all work. (Tr. 242-43).

The ALJ obviously rejected Dr. Davis' opinion. However, in so doing he failed to discuss (or even acknowledge the existence of) this particular item of medical evidence from Plaintiff's treating physician. Plaintiff asserts that such requires reversal of the Commissioner's decision. For the reasons discussed below, the Court agrees.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical

condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Nonetheless, the ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

As the Sixth Circuit recently made clear, however, when an ALJ chooses to accord less than controlling weight to the opinion of a treating physician, he must adequately articulate his rationale for doing so. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544-47 (6th Cir. 2004). As the *Wilson* court held:

> If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors - namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source - in determining what weight to give the opinion.
>
> Importantly for this case, the regulation also contains a clear procedural requirement: "We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion." A Social Security Ruling explains that, pursuant to this provision, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case

11

> record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

*Id.* at 544 (internal citations omitted).

As the *Wilson* court further held, failure to comply with this requirement is not subject to harmless error analysis. *Id.* at 546-47. As the court expressly stated:

> A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. . .To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with § 1527(d)(2), would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory.

*Id.* at 546 (internal citations omitted).

The present dispute is not whether the ALJ's stated rationale for discounting Dr. Davis' opinion is sufficient. As noted above, the ALJ's decision contains absolutely no mention of Dr. Davis' opinion. Thus, there is no evidence that the ALJ even considered Dr. Davis' opinion. Furthermore, even assuming that the ALJ was aware of (and considered) Dr. Davis' opinion, the ALJ failed to articulate *any* rationale for according less than controlling weight to Dr. Davis' opinion. Given the testimony of the vocational expert that the limitations expressed by Dr. Davis precluded the performance of all work, the significance of the ALJ's error is clear. The ALJ's failure clearly violates the principle articulated in *Wilson*.

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse

12

the Commissioner's decision and immediately award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision fails to comply with the relevant legal standard, neither is the evidence of Plaintiff's disability compelling. Accordingly, the Court recommends that the Commissioner's decision be reversed and this matter remanded for further factual findings, including but not necessarily limited to, the proper consideration of the opinions expressed by Plaintiff's treating physicians.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision does not comply with the relevant legal standards and must, therefore, be reversed. The Court further concludes, however, that there does not exist compelling evidence that Plaintiff is disabled. Accordingly, it is recommended that the Commissioner's decision be **reversed** and this matter be **remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Date: July 13, 2005         /s/ Ellen S. Carmody
                            ELLEN S. CARMODY
                            United States Magistrate Judge